PAUL H. GRAHAM & others *vs.* WILLIAM W. ROBERTS.

Essex.   November 5, 1908. — November 12, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Constitutional Law.   Municipal Corporations.   Haverhill.*

Article 2 of the Articles of Amendment to the Constitution of the Commonwealth
recognizes the right and duty of the General Court to determine what powers,
privileges and immunities should be granted to any city for its regulation and
government, and secures to the inhabitants the right to give or withhold their
consent to the establishment of a new municipal government, making it plain
that different cities may be established with different kinds of government,
different officers and different modes of electing them.

St. 1908, c. 574, amending the charter of the city of Haverhill, is constitutional.

St. 1908, c. 574, amending the charter of the city of Haverhill, is not unconstitu-
tional or invalid because it restricts the printed names on the official ballot for
the mayor, the aldermen and the members of the school committee of that city
to the two highest candidates for each office as determined by a preliminary elec-
tion for nominations, nor because it denies the right to have printed on the ballot
the name of a candidate nominated by a caucus of a political party, nor because
it denies the right to have printed on the ballot the name of a candidate nomi-
nated independently, nor because it denies the right to have printed on the ballot
a specification of a candidate's party or of the political principles which he repre-
sents, nor because it requires a candidate to sign and swear to a request that his
name be printed as such candidate on the official ballot to be used at the pre-
liminary election for nominations and to file a petition of qualified voters in
which they certify that he is of good moral character and qualified to perform
the duties of the office.

St. 1908, c. 574, amending the charter of the city of Haverhill, is not unconstitu-
tional or invalid because the officers elected thereunder are subject to removal
by an election of the voters of the city called and held under the provisions of
that act.

St. 1908, c. 574, amending the charter of the city of Haverhill, is not unconstitu-
tional because of its provision that it should not take effect until it was accepted
by the voters of Haverhill.

St. 1908, c. 574, amending the charter of the city of Haverhill, is not unconstitu-
tional by reason of its provisions for the so called initiative and referendum in
regard to the adoption of ordinances.

The provisions of the Constitution which forbid the adoption of the so cal
initiative and referendum in general legislation do not extend to the making
by-laws and ordinances by towns and cities under the authority of the Legislatu
in regard to matters of local concern.

TWO PETITIONS, each by ten taxpayers and qualified voters
of the city of Haverhill, the first for a writ of mandamus ad-
dressed to the clerk of that city commanding him not to prepare

and distribute the ballots for the election of officers in accordance with the provisions of St. 1908, c. 574, entitled an act to amend the charter of the city of Haverhill, and the second for a writ of certiorari to quash the proceedings of the city clerk in certifying to the records of an election about to be held under the provisions of that statute, the petitioners in both cases seeking to have St. 1908, c. 574, which was accepted by the voters of Haverhill at an election held in conformity with its provisions, declared unconstitutional.

The cases came on to be heard together before *Sheldon,* J., who with the consent of the parties reserved them for determination by the full court, such disposition to be made of them as justice might require. It was stated in the reservation that the right of the petitioners to bring the petitions was not questioned and that the sole question presented was the constitutionality of the act.

*E. S. Abbott,* (*D. J. Linehan* with him,) for the petitioners.

*B. B. Jones,* (*J. J. Winn & O. J. Carlton* with him,) for the respondent.

KNOWLTON, C. J. The only question presented by the report of the single justice upon these petitions is whether the statute of 1908, c. 574, which is an act to amend the charter of the city of Haverhill, is constitutional. The statute prescribes a very radical departure from the methods of municipal government which hitherto have been practised in Massachusetts and in most of the cities of the other States. It is at least very doubtful whether the practical working of this system, which appears in our legislation of this year for the first time, will be satisfactory to the people who have voted to adopt it; but the question before us is not whether the provisions of the statute are well adapted to conditions existing in the city of Haverhill and likely to give the people a beneficent and well ordered government, but whether they are within the constitutional power of the Legislature to enact.

The principal contention of the petitioners is that they are in conflict with Article 9 of the Declaration of Rights of the Constitution of Massachusetts, which is as follows:

" All elections ought to be free ; and all the inhabitants of this Commonwealth, having such qualifications as they shall

establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments."

The petitioners seem to construe this article not only as applying generally to elections of municipal officers, but as meaning that the inhabitants of different cities in different parts of the Commonwealth shall all have an equal right to elect the same number and kind of municipal officers, and to be elected to the same offices, as the inhabitants of any other city in the Commonwealth. This is not the true construction of the article. While all inhabitants having the prescribed qualifications have absolutely equal rights in reference to the election of the officers of the State government, the Constitution recognizes the fact that a proper application of the principle of local self-government may call for the election of different officers, and for their election in different ways, in different cities of the Commonwealth.

Article 2 of the Articles of Amendment is in part as follows:

" The General Court shall have full power and authority to erect and constitute municipal or city governments, in any corporate town or towns in this Commonwealth, and to grant to the inhabitants thereof such powers, privileges, and immunities, not repugnant to the Constitution, as the General Court shall deem necessary or expedient for the regulation and government thereof, . . . Provided, that no such government shall be erected or constituted in any town not containing twelve thousand inhabitants, nor unless it be with the consent, and on the application of a majority of the inhabitants of such town, present and voting thereon," etc.

This recognizes the right and duty of the General Court to determine what powers, privileges, and immunities should be granted to any city for the regulation and government of it, and secures to the inhabitants the right to give or withhold their consent to the establishment of the new municipal government. This makes it plain that different cities may be established with different kinds of government, different officers, and different modes of electing them. As was said in *Larcom* v. *Olin*, 160 Mass. 102, " the number of the population, the territorial situation, the pursuits and character of the people, their traditions and peculiar town institutions, as well as the probable future

growth of the town, all may well be considered by the General Court, not only in deciding whether a city government should be established, but, if established, what the provisions of the charter should be." So in the *Opinion of the Justices*, 138. Mass. 601, 603, we find this language : "The power of the Legislature to make or to authorize local laws for the administration of local affairs is beyond question. It has the right to make local laws to meet the peculiar exigencies of any part of the community. The qualifications required to fill an office in one place may be different from those required for a similar office in other places," etc. In *Cole* v. *Tucker*, 164 Mass. 486, 489, 490, the court says : "There is nothing in the Constitution which requires that the laws regulating elections for city and town officers shall be uniform throughout the Commonwealth, and in some respects the laws regulating elections in cities for city officers have always been different from those regulating elections in towns for town officers. . . . In matters which concern the form of holding elections for city and town officers, in the absence of anything in the Constitution prescribing the manner in which such elections shall be held, we are of opinion that the provisions need not be the same for all the cities and towns of the Commonwealth." The statute before us does not assume to give the voters of Haverhill the right to vote for the same officers, and in the same way, as the voters of other cities in the Commonwealth, but the right to vote for such officers, and to vote for them in such a manner, as the Legislature and a majority of the voters of Haverhill have determined to be for the best interests of the inhabitants of that city. It gives to all the voters of that city absolutely equal rights to elect others to offices, and to be elected themselves, in accordance with the system of municipal government which is established there for all alike.

The petitioners contend that the rights. of inhabitants of Haverhill are not equal to the rights of other inhabitants of the Commonwealth in the following particulars, namely :

" 1. Restricting printed names on the ballot to the two highest candidates for an office in a preliminary election for nomination.

" 2. Denying right to have printed on the ballot the name of the candidate nominated by the caucus of a political party.

" 3. Denying right to have printed on the ballot the name of

the candidate nominated independently of a party caucus by nomination papers.

"4. Denying right to have printed on the ballot a specification of the candidate's 'party or political principle which he represents, expressed in not more than three words.'

"5. Requiring the man to seek the office — no longer can the office seek the man — and to request and swear before his name can go on the ballot, and to have a petition of qualified voters in which they certify that they believe him to be of good moral character and qualified to perform the duties of the office.

"6. Requiring men to accept an office of uncertain tenure with liability to be recalled at any time without just cause, or for a legislative, executive or judicial act."

The first five of these particulars are merely regulations of the methods of voting. First, for the final election, an official ballot is prescribed. Then a preliminary election for nomination is provided, to determine what names shall appear on the final official ballot. General provisions for a similar object are found in our law for voting by the Australian ballot, the constitutionality of which has been affirmed. *Cole* v. *Tucker,* 164 Mass. 486.

The regulation that only the names of the two candidates chosen at the preliminary election shall appear on the final official ballot is simply a regulation for the election, which the Legislature and the people may adopt, and the same is true of the prohibition of the use of the names of candidates nominated by nomination papers, or by a caucus of a political party. Of the same kind is the prohibition of a statement of the candidate's party or political principle. It is not unreasonable, at least it is a regulation which constitutionally may be made, that no one shall be entitled to have his name go on the official ballot for the preliminary election unless he affirms in writing that he is a candidate. It is not unreasonable to require that only persons believed to be of good moral character and qualified to perform the duties of the office shall be accepted as candidates whose names are to go upon the official ballot, and that as many as twenty-five voters shall request that a candidate's name be put upon the ballot before it shall be placed there. There is no constitutional restriction upon the power of the General Court to fix the qualifications of city officers. *Opinion of the Justices,*

138 Mass. 601, 603.    *Larcom* v. *Olin,* 160 Mass. 102,108.    *Commonwealth* v. *Plaisted,* 148 Mass. 375,386.    *Opinion of the Justices,* 165 Mass. 599, 601.    There is a space for writing in names not printed on the ballot.    This secures the right of every one to vote as he pleases, and the requirements limiting the names that are to be printed on the ballot are within the power of the Legislature.    That was settled in regard to the Australian ballot in *Cole* v. *Tucker,* 164 Mass. 486, and *Miner* v. *Olin,* 159 Mass. 487.    See also *Eckerson* v. *Des Moines,* 115 N. W. Rep. 177; *In re Pfahler,* 150 Cal. 71; *Brown* v. *Galveston,* 97 Texas, 1.

The sixth objection is not well founded.    It is within the power of the Legislature, in the absence of constitutional restriction, to shorten the term of a public office, or to abolish the office during the term of an incumbent.    In *Taft* v. *Adams,* 3 Gray, 126, Chief Justice Shaw said: "Where an office is created by law, and one not contemplated, nor its tenure declared by the Constitution, but created by law solely for the public benefit, it may be regulated, limited, enlarged or terminated by law, as public exigency or policy may require."    See also *Opinion of the Justices,* 117 Mass. 603, 604; *Donaghy* v. *Macy,* 167 Mass. 178; *Opinion of the Justices,* 165 Mass. 599, 601.

The Legislature might constitutionally prescribe that the act should not take effect until it was accepted by the voters of Haverhill.    This was a matter of local concern, which is an exception to the rule that general legislative authority cannot be delegated.    The question whether the Australian ballot shall be adopted may be referred to the voters of a town.    *Cole* v. *Tucker,* 164 Mass. 486.    See also cases cited in *Opinion of the Justices,* 160 Mass. 586.    Whatever may be thought of the question whether the voting of women at an election of town officers in a particular town is a matter merely of local concern or is of general concern to the whole State, about which the justices differed in the opinions last cited, we think it plain that the adoption of an amended city charter of this kind is strictly a local matter.    Indeed, the provision requiring the consent of the inhabitants to the creation of a city in article 2 of the Amendments to the Constitution, quoted above, tends to confirm this view.    See also *Stone* v. *Charlestown,* 114 Mass. 214; *Wales* v.

*Belcher*, 3 Pick. 508; *Commonwealth* v. *Hilton*, 174 Mass. 29. For statutes illustrative of the principle, see St. 1907, c. 560, §§ 145, 113, 108–143, 362, 363, 364, 367, 368; St. 1906, c. 252, § 1. The passage of statutes to take effect only in such towns as vote to accept their provisions has been common for many years.

The provision for the so called initiative and referendum in regard to the adoption of ordinances is not unconstitutional. Legislation in towns, by by-laws, in regard to subjects strictly of local concern, has been a part of the law of Massachusetts from the earliest times. *Opinion of the Justices*, 160 Mass. 586, 590. Whether such legislation shall be inaugurated by the people, or entirely by a representative body or board of officers, is a matter of regulation in regard to which our Constitution is silent. It is therefore for the General Court to determine by enactment.

The provisions of the Constitution which forbid the adoption of the so called initiative and referendum in general legislation do not extend to the making of by-laws and ordinances by towns or cities under the authority of the Legislature, in regard to subjects of local concern. *Opinion of the Justices*, 160 Mass. 586, 589.

*Petitions dismissed.*