**Jane WRIGHT, Plaintiff,**

v.

**Glenn A. RICHTER et al., Members of the Department of Elections for Kent County, Defendants.**

**Wade RICHARDSON, Plaintiff,**

v.

**Hayward HERN et al., Members of the Department of Elections for Essex County, Defendants.**

**Joseph HOLLON, Plaintiff,**

and

**Peter F. Townsend et al., Intervening Plaintiffs,**

v.

**Sigmund SCHORR et al., Members of the Department of Elections for New Castle County, Defendants.**

Civ. A. Nos. 3616-3618.

United States District Court
D. Delaware.
July 10, 1969.

Harold Shaffer, Wilmington, Del., for plaintiffs.

William E. Taylor, Jr., Wilmington, Del., for intervening plaintiffs.

Frank O'Donnell, Wilmington, Del., and Peter J. Nolan, Deputy Atty. Gen., Dover, Del., for defendants.

Before SEITZ, Circuit Judge, and STEEL and LATCHUM, District Judges.

## OPINION

LATCHUM, District Judge.

These three cases, consolidated for hearing, are before the court[1] on plaintiffs'[2] motion for summary judgment declaring 15 Del.C. § 5008(c) to be unconstitutional in so far is it prevents write-in voting in Delaware elections. The defendants,[3] members of the Departments of Elections for each of the three Delaware counties, are charged with the responsibility of conducting all special and general State elections.

On an earlier occasion this court denied plaintiffs' motion for a preliminary injunction enjoining the defendants from holding the general election scheduled for November 5, 1968 without providing for write-in voting. Wright v. Cripps, 292 F.Supp. 294 (D.Del.1968). Jurisdiction was retained to enable this court to consider further plaintiffs' present motion.

Voting machines are used throughout the State in all general and special elections. 15 Del.C. § 5004. They are prepared and adjusted by the several Departments of Elections and are required to be so adjusted that votes can be cast only for those candidates named on the official ballot. 15 Del.C. § 5008(c).[4] While no Delaware statute expressly prohibits write-in voting, the prohibition effectively exists because of the adjustment requirement of § 5008(c).[5]

Plaintiffs contend that since § 5008(c) denies them the privilege of voting for persons other than the candidates listed on the official ballot, that law on its face deprives them as qualified

---

1. This three-judge district court was convened pursuant to 28 U.S.C. § 2284.

2. Plaintiffs and intervening plaintiffs will be referred to collectively herein as "plaintiffs."

3. The State Election Commissioner and the governing bodies of the three counties were originally joined as defendants but the cases have been dismissed as to them by stipulation of the parties. Plaintiffs' motion to convert the cases into class actions has also been withdrawn.

4. The statute provides in part:
 " * * * all knobs shall be locked in any row or column which contains no names of candidates and all knobs shall be locked in spaces, if any, which do not contain names of candidates even though names of candidates appear in other spaces in the same row or column."

5. The parties stipulated and the court agrees that write-in voting is not within the scheme of Delaware election laws.

Delaware voters of the right to participate fairly in the electoral process as guaranteed by the Constitution of the United States and violates the "equal protection" clause of the Fourteenth Amendment. Thus, they argue that all Delaware voters have an absolute right to vote for whomever they please by write-in voting and that this right exists independently of the relative ease with which a qualified person may become a candidate on the official ballot.

 While we are fully aware that the right of suffrage is unquestionably a fundamental right in a free and democratic society since the right to exercise the franchise in an open and unimpaired manner is preservative of other basic civil and political rights, Williams v. Rhodes, 393 U.S. 23, 29–30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); Reynolds v. Sims, 377 U.S. 533, 561–562, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Wesberry v. Sanders, 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), nevertheless, the Supreme Court also teaches that the right to vote is subject to reasonable regulations by the State. The Court in Lassiter v. Northampton County Board of Elections, 360 U.S. 45, 50–51, 79 S.Ct. 985, 989, 3 L.Ed.2d 1072 (1951) stated:

"The States have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised, Pope v. Williams, 193 U.S. 621, 633, 24 S.Ct. 573, 576, 48 L.Ed. 817; Mason v. State of Missouri, 179 U.S. 328, 335, 21 S.Ct. 125, 128, 45 L.Ed. 214, absent of course the discrimination which the Constitution condemns. * * * So while the right of suffrage is established and guaranteed by the Constitution (Ex parte Yarbrough, 110 U.S. 651, 663–665, 4 S.Ct. 152, 158, 28 L.Ed. 274; Smith v. Allwright, 321 U.S. 649, 661–662, 64 S.Ct. 757, 763–764, 88 L.Ed. 987) it is subject to the imposition of state standards which are not discriminatory and which do not contravene any restriction that Congress acting pursuant to its constitutional powers, has imposed. See United States v. Classic, 313 U.S. 299, 315, 61 S.Ct. 1031, 1037, 85 L.Ed. 1368. * * *

"We do not suggest that any standards which a State desires to adopt may be required of voters. But there is wide scope for exercise of its jurisdiction."

In Delaware the right to vote is conferred by Art. 5, § 2 of the Delaware Constitution, Del.C.Ann., which provides, in part, as follows:

"Every citizen [6] of this State * * * shall be entitled to vote * * * for all officers that now or hereafter may be elected by the people and upon all questions which may be submitted to the vote of the people * * *."

Courts of other States that have construed similar constitutional provisions have almost unanimously concluded that it is a State-granted constitutional right for an elector to cast his ballot for whom he pleases, that it is necessary for him to be given the means and reasonable opportunity to write or insert upon the ballot the names of his choice and that any statute which confines a voter to the selection of names on the official ballot is unconstitutional under State law. *See* Thompson v. Willson, 223 Ga. 370, 155 S.E.2d 401 (1967); Jackson v. Norris, 173 Md. 579, 195 A. 576 (1937); Stewart v. Cartwright, 156 Ga. 192, 118 S.E. 859, 861–862 (1923); Cohn v. Isensee, 45 Cal. App. 531, 188 P. 279, 282 (1920); Barr v. Cardell, 173 Iowa 18, 155 N.W. 312, 314 (1915); Wescott v. Scull, 87 N.J.L. 410, 96 A. 407, 410 (1915); People ex rel. Hiyne v. McCormick, 261 Ill. 413, 103 N.E. 1053, 1057 (1913); Mayor, etc., City of Jackson v. State, 102 Miss. 663, 59 So. 873 (1912); Littlejohn v. People, 52 Colo. 217, 121 P. 159, 162 (1912); Park v. Rives, 40 Utah 47, 119 P. 1034, 1036 (1911); Oughton v. Black, 212 Pa.

6. In order to vote a citizen must be at least 21 years of age, a resident of the State for 1 year, and of the county 3 months and of the election district 1 month and duly registered as required by law. Art. 5, § 2, Del.Const.

1, 61 A. 346 (1905) dicta; State ex rel. Runge v. Anderson, 100 Wis. 523, 76 N.W. 482, 486 (1898); Cole v. Tucker, 164 Mass. 486, 41 N.E. 681 (1895); Sanner v. Patton, 155 Ill. 553, 40 N.E. 290, 293 (1895); State ex rel. Attorney-General v. Dillon, 32 Fla. 545, 14 So. 383, 393–394 (1893); De Walt v. Bartley, 146 Pa. 529, 24 A. 185 (1892); People ex rel. Bradley v. Shaw, 133 N.Y. 493, 31 N.E. 512 (1892).[7]

An examination of the history of Delaware's election laws indicates that write-in voting was permitted until 1913. From the earliest election law adopted in 1734 until 1881, there were no official ballots used in Delaware and an elector could write or print his own ballot. *See:* 1 Del.Laws, Chap. 61, § 3; 4 Del.Laws, Chap. 152 § 10; 6 Del.Laws, Chap. 257 § 6. In 1881, the General Assembly for the first time required official ballots to be used in elections and designated their color and size and prohibited identifying marks or symbols from being placed on ballots, but the law also provided "that the provisions of this Section shall not be construed so as to hinder or prevent anyone from erasing or scratching a name or names of any candidates from the ballot intended to be voted by him, and substituting another or other names in lieu thereof either in writing or on printed slips." 16 Del.Laws, Chap. 328 § 1. In 1891, the election laws were changed to provide for the nomination of candidates by political parties and for the first time defined a political party as any organization of at least 100 bona fide citizens of a county, which shall by means of a convention, primary election or otherwise, nominate candidates for public office. 19 Del.Laws, Chap. 37 § 3. Yet, it is interesting to note that the same Act which provided for the endorsement of a political party in order to gain official ballot position nevertheless continued write-in voting. Section 19 of the Act provided that "[a]ny voter while in the booth may erase the name of any candidate and substitute the name of any person in any column of the ballot which shall stand in lieu of the original name", 19 Del.Laws, Chap. 37 § 19. The law remained unchanged in this respect until March 10, 1913, when the legislature adopted a new election law which made void any official ballot on which a name was written. 27 Del.Laws, Chap. 65 § 23. Thus, since 1913 no provision has been made for write-in voting and qualified electors have been confined to voting only for those candidates who have gained ballot positions through the endorsement of a recognized political party.

So far as we have been able to ascertain, no one has ever challenged the constitutionality of these election provisions in the State courts despite the clear language of Art. 5, § 2 of the Delaware Constitution quoted above.

■ In our view, the question of the constitutionality of 15 Del.C. § 5008(c) which appears to prevent write-in voting by voting machine, is initially one for answer by the State courts by reference to the State Constitution and laws. Particularly is this so where the right of suffrage is not an absolute privilege springing full bloom from citizenship of the United States but a right to be exercised as the State may direct, provided, of course, the direction does not discriminate between individuals in violation of the Federal Constitution or contravene any restriction imposed by Congress under its constitutional powers. Kramer v. Union School Dist. No. 5, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Harper v. Virginia Bd. of Elections, 383 U.S. 663, 665, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Pope v. Williams, 193 U.S. 621, 632, 24 S.Ct. 573, 48 L.Ed. 817 (1904).

■ Therefore, we are of the opinion that we should, at present, refrain from exercising our jurisdiction of the matter.

---

7. A handful of cases take a contrary view: *See* Chamberlin v. Wood, 15 S.D. 216, 88 N.W. 109 (1901), (affirmance by a divided court); State ex rel. Mize v. Mc-Elroy, 44 La.Ann. 796, 11 So. 133 (1892); and McKenzie v. Boykin, 111 Miss. 256, 71 So. 382 (1916).

In taking this action the court does not proceed from any notion that the plaintiffs are required, as a matter of law, first to exhaust their state court remedies. Rights under the federal constitution are always a proper subject for federal adjudication. Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L. Ed.2d 647 (1967); McNeese v. Bd. of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Rather, the doctrine of federal abstention on which this court declines to exercise its jurisdiction at this time is based on avoidance of a premature and perhaps unnecessary federal constitutional question. No court should go out of its way to reach a constitutional question before it has to do so or to adjudicate the constitutionality of a state law from a federal constitutional viewpoint until the State courts have been afforded a reasonable opportunity to pass upon the law from the standpoint of the State Constitution. By so abstaining, we are not giving the State Courts the first opportunity to vindicate a federal right but are simply giving them the first opportunity to vindicate voting rights which are primarily conferred by the Delaware Constitution. Compare Zwickler v. Koota, 389 U.S. 241, 248–251, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

State courts, not the federal courts, have the responsibility of vindicating voting rights conferred by the state constitutions, for these rights affect the State directly. "[A] federal district court is vested with discretion to decline to exercise or to postpone the exercise of its jurisdiction in deference to state court resolution of underlying issues of state law." Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965).

If the state courts should find that § 5008(c) cannot constitutionally stand against the right of suffrage conferred by the Delaware Constitution, that determination of state law would spare this court of an unnecessary constitutional adjudication based on the federal constitution. Harrison v. NAACP, 360 U.S. 167, 177, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

Finally, in postponing the exercise of jurisdiction we perceive no undue delay or prejudice will be entailed. The next general election in Delaware does not occur until November 3, 1970, and by promptness on plaintiffs' part and perhaps by the use of the certification process, the state constitutional question could be resolved by the Delaware Supreme Court in ample time to permit plaintiffs to obtain a determination by this court in the event they feel that action by us is still required.

Therefore, the court retains jurisdiction but abstains from acting at this time and until the plaintiffs obtain a determination by the Delaware courts of the state constitutional law issue or demonstrate to us that it is not feasible to obtain it without reasonably possible prejudice to their rights under this action.

Present order in accordance with this opinion.